Good morning, Your Honors. Brian Russell, representing Mr. Pete Hoirup. I'd like to ask the Court if there's any questions you'd like to address or have me respond to before I begin my argument this morning. If not, I'll go ahead and continue. I represent Pete Hoirup. He was a 33-year employee of Alaska Airlines. Mr. Hoirup was also a member of the Airline Mechanics Fraternal Association. A collective bargain agreement existed between Alaska and Mr. De Anza. Mr. Hoirup was terminated on June 20, 2000. Went to arbitration and won. Correct. Correct. And subsequently, I filed a complaint asserting state law claims in state court that was removed in federal court, federal court-granted summary judgment. What would be the object of that suit? To seek attorney fees and interest that are allowed by Washington State statute to employees. This is a fundamental right in the State of Washington. It is a right based upon state law independent of any contractual rights and specifically any rights granted under the CBA. Isn't termination part of the CBA? Termination, part of the CBA. There is a – There's an express provision in the CBA that says an employee has to be discharged for a cause. Correct. And your client pointed to that, sought arbitration, and prevailed, and was ordered reinstated and paid back bail. Correct, Your Honor. There is provision for termination and termination for a cause under the CBA. That's why the issue of termination and the issue of wrongful termination was submitted to collective bargain agreement. This is a point, Your Honor, that I find unusual, but I think it's a point that both Alaska Airlines and Mr. Hiriff agrees. And I refer the Court to page 32 of Alaska's brief note 10. Really, the parties did what was required under the CBA. They submitted the issue of termination to collective bargain agreement. Why isn't this case exactly that, Alice Chalmers v. Lewis? I understand it's a different statutory theme here. It's a statute there. It was a common law cause of action. But there what you had was something – a right that only existed because of the collective bargain agreement. There was an attempt to bring a State law claim to get an – essentially a different remedy. And the Court said, no, you can't do that because the rights and remedies with respect to this issue are governed entirely by the collective bargaining agreement. There are a lot of part issues in the area of 301 preemption, but I'm not sure this is one of them. Okay. The difference is, Your Honor, I believe, is the difference in the collective bargaining agreement under which those cases are decided, those cases in this case. In this case, the collective bargaining agreement didn't in any way, shape or form address the State statutory rights of attorney fees, of interest, of statutory It didn't address the question of when somebody could be terminated and what the remedies are if they were terminated the wrong way. That's exactly what it addressed. It did not address the issue of the right to costs of attorney fees. In fact, the collective bargaining agreement was – Who represented your client in the arbitration? An attorney, Aliki Reclides. She was a union attorney as well as myself. I also represented Mr. Hyrup in these collective bargaining, the Board of Adjustment hearings. And who paid for that? My client did, out-of-pocket. The union? No. Your client paid for that? My client paid my attorney fees out-of-pocket, out of his pocket. The collective bargaining agreement says, The maximum liability of the company shall be limited to the amount of normal wages he would have earned at straight-time pay in the service of the company had he not  So why doesn't that address exactly the question of what the limitations are on the remedies? There's a difference, Your Honor, between the remedy of wages and the actual costs incurred. There's no dispute between Alaska and Pete Hyrup that the issue of wrongful termination was properly before the Board or that there's any dispute that the back wages were ordered. In fact, the Board of Adjustment didn't get into the area of what the amount of the wages were and a determination of those wages. They left that outside of the hearings and the opinion and award. That was decided between Alaska. Do you have any reason to think that this Washington statute covers this kind of situation? Well, that demonstrates that the statute, which really has to do, I suppose, with people getting paid wages during times that they were actually working, deals with that. But I don't think it's a remedy for a back pay or as a remedy for a wrongful discharge. There are numerous cases cited in my brief, Washington cases, that deal directly with union, collective bargaining agreements, payment of attorney fees on reinstate Question. For wrongful termination, does this statute apply for wrongful termination for the Washington statute, as opposed to somebody who worked and wasn't paid what they were supposed to get? I'd have to go back and look at the decision. That's critical, because otherwise we have a non-case here, and I suspect we kind of do. I don't know that the Washington courts have made a differentiation. Quite frequently, that's where all of the remedies come from. Once it's a law, you can collect if it's a proper termination? No. Only for – there's really not – Wrongful termination. Actually, that's not the issue either. Wrongful termination under this statute, as opposed to other – in other ways. Excuse me. I'll try to answer your question first. Actually, under the Washington statute, it makes no difference whether it's a rightful or wrongful termination. The Washington statute just says a failure to pay wages for whatever reason entitles the employee to attorney fees. So whether they're rightfully or wrongfully terminated is not the issue. The only question is, were they not paid wages? So it's not really an issue of rightful or wrongful. Is this the statute we're dealing with? Any employer – it's 49.52. These are, I guess, rigged. Is that what they are? Any employer or officer who willfully and with intent to deprive the employee of any part of his wage and shall pay any employer a lower wage than the wage such an employer is obligated to pay, is that the statute we're talking about? Correct. But that's not really applicable here. It's not that they paid him a lower wage than the wage such an employer was obligated to pay. He said he was terminated. He didn't work at all. He wasn't paid anything. And now there's a question of back paying. Do we have any cases saying that this statute applies to this? Yes. Washington courts have held that that statute applies for nonpayment as well as payment of a lower wage. Correct. Right. It does apply in a nonpayment area. I'm not sure I answered all the questions, but the ‑‑ I guess I was going to point out to the Court, page 32, note 10, where Alaska states, contrary to Hirop's contention, Alaska does not assert that the CBA interpretation is required since it was prevented by the CBA from terminating Mr. Hirop without just cause. On that issue, I guess we agree with Alaska Airlines. Your Honor, I would like to reserve some time for rebuttal, two minutes for rebuttal. That would be fine. Thank you very much for your argument. Thank you. We'll hear from Alaska Airlines this time. Ms. Amar. Good morning, Your Honor. Stephanie DeDeb Amar for Alaska Airlines. Your Honor, federal law preempts any state law that governs rights based on a rooted in a collective bargaining agreement, as well as any state law that attaches legal consequences to any breaches of a collective bargaining agreement. That is precisely what we have here. Without the breach of a collective bargaining agreement, Mr. Hirop has no claims whatsoever under the Washington State statutes at issue here. Your brief did not cite or discuss Lovatis v. Bradshaw at all. Could you tell us why there's not an enormous similarity between that case and this one? Sure, Your Honor. Lovatis can be distinguishable. In Lovatis, what was at issue was a California statute that attached waiting time penalties to an employer's failure to pay wages on time. You knew it was a collective bargaining agreement that set the rate, right? No, Your Honor. It was not the collective bargaining agreement that set the timeliness of the payment. Indeed, the California State statute in Lovatis required an employer to pay an employee wages on time, irrespective of whether that termination was pursuant to a collective bargaining agreement or not. In other words, in Lovatis, what happened was an employer is responsible to pay wages on time whether the employee was discharged or voluntarily resigned. And this statute requires that employers – I have a question about whether it applies, which I'd like you to address, but assuming it applies, it requires employers to pay people whatever their wage is, wherever it's derived from, and if they don't, there are consequences. Right, Your Honor. This statute requires employers to pay wages if those wages are owed, and wages owed in turn are defined by wages owned under any statute, ordinance, or contract. The only thing at issue in this case – This has to be true in Lovatis, too. You only had to pay people on time if you had to pay them. No, because in Lovatis, the employee is entitled to wages on time if she resigns or if she is terminated under whatever the reason, at will or under a contract itself. Here, the only – we're not saying that this statute is invalid on its face. We're saying this statute is preempted as applied to these facts here, because here, the only source of wages owed within the meaning of the Washington statutes is under contract, and in this case, the contract is the collective bargaining agreement. If Mr. Hirons – Let's suppose that this wasn't a wrongful termination. Instead, the claim was that my wage rate under the collective bargaining agreement is $15 an hour and they only paid me $10, right, which is a claim that could be made by either a union – a collective bargaining agreement covered employee or not. Then the statute would apply? But that's – that is Lovatis, it seems to me. Well, Your Honor, if the claim – if the employee is covered by a collective bargaining agreement and the employee points to the collective bargaining agreement to define his wage rate and says, this employer did not pay me that particular wage rate, then that claim would be preempted, because the source of that right, the amount of payment due, is the collective bargaining agreement. If the claim is rather something like a minimum wage statute where the State defines the minimum substantive rights, then the employee would have a right under this statute, and we're not suggesting that this statute is inapplicable to all employee claims or is preempted by the RLA simply because the employee happens to be a unionized employee. Rather, we are saying that the statute is – the RLA preempts the statute with respect to employee claims that are derived in or rooted in – to use your language, Your Honor, in your amicus in Caterpillar – rooted in the collective bargaining agreement. And this is precisely what it is. Without the collective bargaining's just cause provisions, there is no right to wrongful that he has no claim under State law. See, putting aside – Yeah. Do you agree that the Washington statute applies to him? Your Honor, actually, I don't agree that the Washington – I don't think the Washington statute was intended to apply in this situation at all. Are there cases with that? You're asking me to make the plaintiff's argument. I think – I mean, just ask me whether a case is holding. Well, I think the closest case that he has, Your Honor, is the Hitter case, which just generically says that an arbitration award can be – or an arbitration is an action within the meaning of the statute, and a judgment can be an arbitration award. I think that's the closest. I hope you understand that when a judge asks you, are there cases, we're not asking for a plaintiff's or a defendant's response. We're asking for an officer of the court response, just like your obligation to cite cases which stand against your client's position if you discover them. Do you understand that? Yes, I do understand, Your Honor. I don't think there is a case that is exactly on all fours. What I'm suggesting is I think the plaintiff can make that that's a plausible argument because of the Hitter case. But in terms of intent of these statutes – So your response to her question is there are cases that could be interpreted that way. Yes, Your Honor. I believe there are. The reality, though, is that there are lots of State statutes just like this, and I think the intent and the design of these statutes is to get at a situation where an employee simply has not gotten wages to which he or she is entitled under some State law, but not to get at situations where the employee has the opportunity to file and seek remedy through a grievance procedure set forth in a collective bargaining agreement. Washington and at Will State? Yes, it is, Your Honor. That's the presumption. And that's why the just cause provision in a collective bargaining agreement is so powerful, is because – But nonetheless, it is true, and this is what's disturbing about this whole line of cases, that if an employee who is not covered by a union contract has a just cause provision, which is not unheard of at all, or if there's a public policy discharge or other wrongful termination suit available and the statute applies, then they would be entitled to a remedy that people covered by a collective bargaining agreement are not. That's true, Your Honor, but that's true with respect to the whole preemption doctrine. And there's a good reason for that, and that is because employees covered by collective bargaining agreements have certain expectations based on that collective bargaining agreement. Congress intended through the RLA, the LMRA, by analogy, that Federal labor law be uniform in this regard. And so when an employer and a union sit down together and bargain over terms of a collective bargaining agreement, that's a – that should be left to the free play of And so while it's true that an employee that has a just cause provision in an individual contract would be afforded remedies under the Washington State statute, that employee would not be entitled to all the benefits – the other benefits that emanate from the collective bargaining agreement that his union and employer agreed to if that employee were a unionized employee. So that's inherent in the collective bargaining process, and it's – indeed, it's critical to that process, because when an employer sits down with a union and bargains over certain terms, the idea is that the employer and the union can expect some sort of consistency in how that agreement should be interpreted and what the rights and obligations emanate from that agreement. When you have a State interfere in that, you're disrupting the entire process and So I would say that Lovatis is the closest in case to this one. I'm very bothered by the fact that you didn't discuss it, nor, for that matter, did your plaintiffs. It seems to me that that's the case that needs to be dealt with. Your Honor, I think that Lovatis can be distinguished. It can be distinguished, but it's the closest in case, and you never discussed it at all. You haven't cited it. Yeah, Your Honor. It is cited in the brief. But I can't speak to that. I didn't write the brief, Your Honor. We substituted it in this counsel afterwards. But I can assure you that I've looked at Lovatis carefully. If you take a look at Lovatis, in a footnote, the Court says this is not a situation where the State law requires – It's not cited in the brief, but go ahead. I'm sorry? It's not cited in the brief. If you take a look at, in a footnote, the Court says the State law at issue in Lovatis did not require reference to a collective bargaining agreement. With or without the collective bargaining agreement, the employer would have been responsible to the plaintiff for waiting time penalties. That's – and what the Court said, in fact, is that we need to look – to figure out the source of these rights, we need reference to a calendar, not the CBA. Here, without the collective bargaining agreement, the employee has no claim whatsoever because we – But Lovatis actually held – and I guess this is what troubles me. That was true because of the particular facts in Lovatis. Most of the time it wouldn't be true. That is, most of the time, if you had a waiting time problem, or often, it would be because there was a dispute about how much the person was supposed to be paid at the end. In other words, you've got to check for something, but he says it's not what I was supposed to get. I got X, I was supposed to get Y. So then you are in the middle of the collective bargaining agreement. They said, well, in that instance, though, it didn't matter because there was no dispute. Well, here there's no dispute because the dispute's been settled by the arbitration. So why isn't this by Lovatis? It's a situation where there could be an underlying dispute, but either there isn't one or it's been settled. Why don't you then go to the State statute at that point? Because here it's true that there is no dispute at this point, but if you step back – that's always true with a claim for a breach of a collective bargaining agreement. Once you've found the breach, there's no dispute. And so imagine a State statute that said that for any breach of a collective bargaining agreement, the employee is entitled to such and such remedies. Well, once you've found that breach, then there's no dispute as to the amount, and so State law ought to be able to attach remedies. But that's a clearly preempted statute because the only and sole rights emanate from the breach of the collective bargaining agreement. Similarly, here, as applied to this case, the only source of Mr. Hira's rights is the collective bargaining agreement itself, because without that breach, he has no wages owed to him. In Lovatis, that's not true. With or without a collective bargaining agreement, whether or not the actual amount is in dispute, the employee is entitled to be paid upon discharge. But how much money is he entitled to be paid upon discharge? Whatever. But that's a hard – I – Bargaining agreement. Your Honor, I acknowledge that's a harder case, but that's not what we have here. This is an easy case in that respect. I think we understand your argument. You're substantially over time. I apologize, Your Honor.  It's not a problem. Thank you very much for your argument. Thank you, Your Honor. Rebuttal? As you walk up, let's suppose that you were allowed to present this claim in State court, and Alaska defended on the basis that your client was an at-will employee and could have been discharged for any reason and, therefore, is not entitled to any amount of pay at all. How would you respond to that? I would respond to that, certainly by – By pointing to the CBA and saying he has a just cause provision? No. Actually, Your Honor, Washington is an at-will State. And actually, my response to that at any future hearings is, is that really his termination or non-termination, whether there was a right to terminate or not terminate, under Washington law is absolutely irrelevant. The only issue is not whether he was terminated, not whether there was a right to terminate. It's simply that he was not paid wages. That's the only issue under the Washington statute. And if Alaska responded by saying he's been paid every dime, how would you determine that? He was not timely paid. By referring to the CBA, right? No. No, not reference to the CBA. I can simply have him establish he was not timely paid his wages until they were forced to do so. If I may, I would like to address the Lobotus case that Judge Bozon brought up in the last argument. Here, the parties were free to address the arbitration costs, the attorney fees, interest, and damages under the CBA. AMFA and Alaska chose not to. In fact, what they did is they put in provisions for stenographer costs, witness fees, all kinds of provisions related to the cost of the case. Excuse me? What about the maximum liability language? That's not troubling. I was talking about costs, Your Honor. That has to do with the fact that there is a provision relating to what wages will be paid. There is a provision relating to what wages will be paid. It is silent when it comes to the issues of attorney fees, interest, and the cost of actually the proceeding. Now, Highridge's claims don't conflict with any term of the CBA. There's no term. You can't even argue that there's some remote term that addresses attorney fees or interest in the AMFA-Alaska CBA. A State law claim under Libatus is not preempted for non-negotiated substantive rights. The Washington wage statutes confer substantive, non-negotiable, statutory guaranteed rights under Washington law. I cited Young in the United Food and Workers Union in my reply at page 7 on that issue. I see, Your Honor, that I am out of time. Unless you have a question, I will sit down. I don't see any more. Thank you for your argument. Thank you. Thank both sides for their argument. The case is argued and will be submitted for decision.
judges: Thompson, Hawkins, Berzon